## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ANDREW MARTINEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE, Commissioner** | § | **SA-09-CV-0755 FB (NN)** |
| **of the Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   Honorable Fred Biery**
      **Chief United States District Judge**

### Introduction

Plaintiff Andrew Martinez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Martinez is not disabled for the purposes of the Social Security Act (the Act) and denying Martinez's applications for Disability Income Benefits (DIB) and Supplemental Security Insurance (SSI).  Martinez asked the district court to reverse the Commissioner's decision and to render judgment in his favor.[1]  In the alternative, Martinez asked the court to remand the case for further proceedings.

After considering Martinez's brief in support of his complaint,[2] the brief in support of the

---

[1]Docket entry # 14.

[2]Docket entry # 15.

Commissioner's decision,[3] the record of the SSA proceedings, the pleadings on file, the

applicable case authority and relevant statutory and regulatory provisions, and the entire record in

this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C.

§ 636(b) and this district's general order, dated July 17, 1981, referring for disposition by

recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the

plaintiff's application for benefits.[4]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as

provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record, Martinez exhausted his administrative remedies prior to filing this

action in federal court.  Martinez applied for disability benefits on August 6, 2007, alleging

disability beginning on July 1, 2006.[5]  Martinez based his on-set date on an on-the-job injury that

resulted in a broken arm, clavicle, and ribs.  Martinez underwent treatment and was released for

work on November 13, 2006.  Before Martinez returned to work, he fell off of his front porch

and broke his foot.[6]  Martinez claims disability on the foot injury—the injury that occurred over

four months after the alleged on-set date.

---

[3]Docket entry # 15.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 122 & 125.

[6]*Id*. at p. 316.

The Commissioner denied Martinez's applications initially and on reconsideration.[78] Martinez then asked for a hearing before an ALJ.[9]  An ALJ held a hearing on November 3, 2008.[10]  The ALJ issued a decision on December 3, 2008, concluding that Martinez is not disabled within the meaning of the Act.[11]  Martinez asked the Appeals Council to review the decision.[12]  On July 16, 2009, the Appeals Council declined to review the decision, determining no reason existed for a review.[13]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). After receiving permission to proceed in forma pauperis, Martinez this action on October 1, 2009 seeking review of the Commissioner's decision.[14]

### Issue Presented

Is the ALJ's decision that Martinez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

---

[7]*Id*. at pp. 40-43.

[8]*Id*. at pp. 21-24, 34 & 38.

[9]*Id*. at p. 69.

[10]*Id*. at p. 19.

[11]*Id*. at p.17.

[12]*Id*. at p. 8.

[13]*Id*. at p. 1.

[14]Docket entry # 5.

**Analysis**

**A. Standard of Review**

        In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[15]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[17]

        If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[18]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[19]  Conflicts in the evidence and credibility assessments

---

        [15]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

        [16]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

        [17]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

        [18]*Martinez*, 64 F.3d at 173.

        [19]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

are for the Commissioner and not for the courts to resolve.[20]  Four elements of proof are weighed

by the courts in determining if substantial evidence supports the Commissioner's determination:

(1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

education and work experience.[21]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

application for benefits, and is under a disability, is eligible to receive benefits.[22]  The term

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."[23]  A claimant shall be determined to be disabled only if his physical or

mental impairment or impairments are so severe that he is unable to not only do his previous

work, but cannot, considering his age, education, and work experience, participate in any other

kind of substantial gainful work which exists in significant numbers in the national economy,

regardless of whether such work exists in the area in which the claimant lives, whether a specific

job vacancy exists, or whether the claimant would be hired if he applied for work.[24]

---

[20]*Martinez*, 64 F.3d at 174.

[21]*Id.*

[22]42 U.S.C. § 1382(a)(1) & (2).

[23]42 U.S.C. § 1382c(a)(3)(A).

[24]42 U.S.C. § 1382c(a)(3)(B).

**2. Evaluation Process and Burden of Proof**

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[25]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[26]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[27]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[28]  The second step involves determining whether the claimant's impairment is severe.[29]  If it is not severe, the claimant is deemed not disabled.[30]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[31]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[32]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity (RFC) and the demands of his past work.[33]  If the claimant is still able to do his past

---

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

work, the claimant is not disabled.[34]  If the claimant cannot perform his past work, the

Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his

residual capacities, age, education, and work experience, to do other work.[35]  If the claimant

cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the

first four steps of the sequential analysis.[36]  Once the claimant has shown that he is unable to

perform his previous work, the burden shifts to the Commissioner to show that there is other

substantial gainful employment available that the claimant is not only physically able to perform,

but also, taking into account his exertional and nonexertional limitations, able to maintain for a

significant period of time.[37]  If the Commissioner adequately points to potential alternative

employment, the burden shifts back to the claimant to prove that he is unable to perform the

alternative work.[38]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step five of the decision-making process.

The ALJ first determined that Martinez was insured for DIB until March 31, 2009.[38]  At step one,

the ALJ determined that Martinez has not engaged in substantial gainful activity since July 1,

---

[34]*Id.*

[35]*Id.*

[36]*Leggett*, 67 F.3d at 564.

[37]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[38]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[38]SSA record, p. 12.

2006.[39]   At step two, the ALJ determined that Martinez has the following severe impairments:

diabetes mellitus, hypertension, left lisfranc foot fracture with residual osteoarthritis, and history

of left clavicle fracture.  The ALJ determined that these impairments do not meet or medically

equal an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1.  At step four, the ALJ

determined that Martinez cannot perform his past relevant work and that he can perform light

work.[40]   At step five, the ALJ determined that Martinez can work at jobs that exist in significant

numbers in the national economy.[41]  Thus, the ALJ concluded that Martinez is not disabled.[42]

## C.  Martinez's Allegations of Error

**Step three**.  Martinez first challenges the ALJ's step-three determination—that Martinez

does not have an impairment or combination of impairments that meets or medically equals a

listed impairment.  Martinez maintains he meets listing 1.03.  To meet that listing, a claimant

must have undergone reconstructive surgery or surgical arthrodesis of a major weight-bearing

joint, with the inability to ambulate effectively.[43]  "Inability to ambulate effectively means an

extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with

the individual's ability to independently initiate, sustain, or complete activities."[44]

[E]xamples of ineffective ambulation include, but are not limited to, the inability

---

[39]*Id*. at p. 14.

[40]*Id*. at pp. 15-16.

[41]*Id*. at p. 16.

[42]*Id*. at p. 17.

[43]20 C.F.R. Part 404, subpart P, app'x 1, listing 1.03.

[44]*Id*. at § 1.00B2b.

to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.[45]

To be disabled under listing 1.03, the claimant must have been unable to return to effective ambulation within 12 months of onset.[46]

Martinez's record does not show that his ability to ambulate has met the requirements for listing 1.03 for a continuous period of not less than twelve months. The record shows that Martinez fell off his front porch and broke his foot a few days before he was released to work. Five days later—on November 10, 2006—Martinez went to the University Hospital emergency room because his left foot was swollen and painful. The attending physician determined that Martinez's left foot had sustained a comminuted fracture—a fracture in which the bone is splintered or crushed into numerous pieces.[47] Martinez's foot was placed in a cast.[48] A couple of weeks later, Martinez was referred to a podiatrist who re-cast the foot.[49] The podiatrist first treated Martinez's injury conservatively, but opined that surgery would probably be required. X-rays showed the fracture healed well.[50] By January 9, 2007, Martinez had progressed to a Cam

---

[45]*Id*.

[46]*Id*.

[47]Medline Plus, definition of "comminuted,"
*available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

[48]SSA record, p. 203.

[49]*Id*. at 282.

[50]*Id*. at p. 281.

walker—a lower extremity boot.  On February 12, 2007, the podiatrist opined that Martinez's foot was progressing well.  At a March 27, 2007 visit the podiatrist, Martinez reported soreness on the bottom of his foot when he walks a lot.  Notably, Martinez was still ambulating on his own at this point.  On July 3, 2007, the podiatrist determined that all conservative treatment measures were exhausted and scheduled Martinez for surgery to fuse together three joints in the mid-foot and restore function to two other joints.[51]  Martinez underwent surgery on his left foot on September 11, 2007.[52]  One week after the surgery, the podiatrist opined that Martinez's progress was excellent.  Martinez continued to report some pain, but the podiatrist opined that Martinez was doing well and encouraged Martinez to return to regular activity.[53]  During his hearing on November 3, 2008, Martinez testified that he can walk for 30 to 40 minutes.[54]

This evidence does not indicate Martinez cannot, or has not been able to, walk without the use of a walker, two crutches or two canes at any time since his foot injury. The evidence does not indicate Martinez is, or has been for at least 12 months, unable to walk a block at a reasonable pace on rough or uneven surfaces, to use standard public transportation, to carry out routine ambulatory activities, such as shopping and banking, or to climb a few steps at a reasonable pace with the use of a single hand rail.[55]  The record reflects that the left-foot injury

---

[51]*Id*. at p. 278.

[52]*Id*. at p. 264.

[53]*Id*. at p. 349.

[54]*Id*. at p. 27.

[55]Dr Cremona opined, however, in a September 11, 2008 physical residual functional capacity assessment that Martinez cannot climb ladders, ropes or scaffolds.  SSA record, p. 303.

restricted Martinez's ability to ambulate during various stages of his treatment, but not to the extent required by listing 1.03.  The record does not show that the injury seriously interfered with Martinez's ability to independently initiate, sustain, or complete activities for a continuous period of time of not less than 12 months.  No evidence indicates Martinez meets listing 1.03.

Martinez complains about the ALJ's consideration about listings 1.02, 1.04, 4.04 and 9.08, but he did not advance an argument about the listings.  Listing 1.02 covers a major dysfunction of a joint(s); the listing applies to major peripheral weight-bearing joints (i.e., hip, knee, or ankle) and major peripheral joints in upper extremities (i.e., shoulder, elbow, or wrist-hand).[56]  The ALJ was correct to consider that listing because Martinez sustained an injury to his arm and foot.

Listing 1.04 covers disorders of the spine.[57]  The record does not reflect a reason for considering that listing.  Reciting the listing in the ALJ's opinion may be nothing more than a typographical error.  Whatever the reason, considering the listing resulted in no harm to Martinez because he does not have a spinal disorder.

Listing 4.04 covers ischemic heart disease.  The ALJ likely considered the listing because Martinez suffers from hypertension.  The medical record shows that Martinez's hypertension is controlled with medication.  Martinez's hypertension is not severe enough to meet listing 4.04.[58]

---

[56]20 C.F.R. Part 404, subpart P, app'x 1, listing 1.02.

[57]20 C.F.R. Part 404, subpart P, app'x 1, listing 1.04.

[58]Listing 4.04 requires the following:

4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

A. Sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:

1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (-1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than aVR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or

2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or

3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or

4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

OR

B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12-month period (see 4.00A3e).
OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence showing:

a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

b. 70 percent or more narrowing of another nonbypassed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a

12

Listing 9.08 covers diabetes mellitus.  The ALJ was correct in considering the listing because Martinez has diabetes, but Martinez's diabetes is not severe enough to meet the listing.[59]

**Step four**.  Martinez also challenges the ALJ's step-four determination, stating that the ALJ erred about his residual functional capacity.  The ALJ determined that Martinez can no longer perform his past relevant work, but that he can perform light work, limited to occasional kneeling and crouching, no climbing of ladders or scaffolds, no unprotected heights or hazards,

---

nonbypassed coronary artery; or

d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404, subpart P, app'x 1, listing 4.04.

[59]Listing 9.08 requires the following:

9.08 Diabetes mellitus. With:

A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or

B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or $PCO_2$ or bicarbonate levels); or

C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. Part 404, subpart P, app'x 1, listing 9.08.

and occasional overhead reaching.[60]  The SSA regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, . . . he . . . can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[61]

The record includes two physical residual functional capacity assessments.  Each assessment is consistent with the ability to do light work.

Dr. Randal Reid completed the first assessment on November 10, 2007.  Dr. Reid opined that Martinez can occasionally lift and/or carry 20 pounds; frequently lift/carry 10 pounds; stand and/or walk at least 2 hours in an 8-hour day; sit about 6 hours in an 8-hour day; no limitations in pushing and/or pulling other than indicated for lifting and carrying; and can occasionally climb ramps, stairs, ladders, ropes and scaffolds.[58]  Dr. Frederick Cremona completed the second assessment on September 11, 2008.[59]  Dr. Cremona opined that Martinez can occasionally lift and/or carry 20 pounds; frequently lift/carry 10 pounds; stand and/or walk at least 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day; no limitations in pushing and/or pulling other than indicated for lifting and carrying; can never balance; and cannot climb ladders, ropes or

---

[60]SSA record, p. 15.

[61]20 C.F.R. § 404.1567(b) (DIB); 20 C.F.R. § 416.967(b) (SSI).

[58]SSA record, p. 249.

[59]*Id*. at p. 301.

scaffolds.[60]  This evidence constitutes substantial evidence supporting the ALJ's step-four

determination.  The assessments are consistent with the ability to perform light work limited to

occasional kneeling and crouching, no climbing of ladders or scaffolds, no unprotected heights or

hazards, and occasional overhead reaching.  The ALJ's assessment accommodates any residual

limitation resulting from Martinez's foot injury, as well as any residual limitation that may have

resulted from his on-the-job injury, although the record reflects no limitation from the on-the-job

injury.  The ALJ did not err in his step-four determination.

      **Step five**.  If a claimant cannot perform his past work, the Commissioner moves to step

five and evaluates the claimant's ability, given his residual capacities, age, education, and work

experience, to do other work.[61]  At that step, the ALJ determined that there are jobs that exist in

significant numbers in the national economy that Martinez can perform.[62]  Martinez challenges

the ALJ's step-five determination.  Martinez contends the ALJ ignored the vocational expert's

testimony.  The ALJ's opinion shows that the ALJ relied on the vocational expert's testimony.

      During Martinez's hearing, the ALJ questioned the vocational expert about jobs that a

person with Martinez's limitations—a younger individual with limited education, limited to light

exertion, occasional kneeling and crouching, no ladders or scaffolds, no heights or hazards,

occasional overhead reaching—can perform.[61]  The vocational expert identified three

---

[60]*Id*. at pp. 302-03.

[61]20 C.F.R. §§ 404.1520 and 416.920.

[62]SSA record, p. 16.

[61]*Id*. at p. 35.

jobs—assembler of small parts, garment sorter and office helper.[62]  The vocational expert

testified that these jobs existed in significant numbers in the national economy.[63]  Martinez's

attorney cross-examined the vocational expert and added a limitation—that the person can stand

or walk for 30 minutes at a time, or the requirement for a sit-stand option.[64]  The vocational

expert identified two jobs—office helper and ticket-taker.[61]  This evidence supports the ALJ's

step-five determination because it indicates there are jobs that exist in significant numbers in the

national economy that Martinez can perform.  This evidence is uncontradicted.

**Recommendation.**  Based on the foregoing analysis, I recommend AFFIRMING the

Commissioner's decision.  Substantial evidence supports the decision, and the ALJ made no

error of law.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States

District Clerk shall serve a copy of this report and recommendation on all parties by either (1)

electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt

requested.  Written objections to this report and recommendation must be filed within 14 days

after being served with a copy of same, unless this time period is modified by the district court.[62]

---

[62]*Id.* at pp. 35-36.

[63]Assembler of small parts: 128,400 in the national economy and 6,500 in Texas; garment sorter: 102,600 in the national economy and 6,000 in Texas; and office helper: 111,400 in the national economy and 7,200 in Texas.  SSA record, p. 35.

[64]SSA record, pp. 36-37.

[61]*Id.* at p. 37.

[62]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[63]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[64]

  **SIGNED** on December 23, 2010.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[63] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[64] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).